UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:18-cv-21990-GAYLES/REINHART
(CASE NO.: 1:16-cr-20685-GAYLES)

NAVIN SHANKAR SUBRAMANIAM XAVIER,

    Movant,

v.

UNITED STATES OF AMERICA,

    Respondent.
_____/

## ORDER AFFIRMING AND ADOPTING REPORT OF MAGISTRATE JUDGE

**THIS CAUSE** is before the Court on Magistrate Judge Bruce E. Reinhart's Report and Recommendation (the "Report") [ECF No. 131]. On May 17, 2018, Movant filed a Motion to Vacate Sentence pursuant to 28 U.S.C. § 2255, attacking the constitutionality of his federal conviction and sentence following his guilty plea in case number 16-cr-20685-GAYLES ("Motion") [ECF No. 1]. On November 11, 2019, after filing numerous amendments, Movant filed the operative Amended Motion to Vacate [ECF No. 72]. On September 8, 2022, following an evidentiary hearing, Judge Reinhart filed his Report, recommending that the Motion be denied and a certificate of appealability be denied. On September 22, 2022, Movant, through counsel, filed Objections to the Report ("Objections") [ECF No. 133]. On October 6, 2022, the Government filed a Response to Movant's Objections [ECF No. 135].

A district court may accept, reject, or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1). Those portions of the report and recommendation to which objection is made are accorded *de novo* review, if those objections "pinpoint the specific findings that the party disagrees with." *United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir.

2009); *see also* Fed. R. Civ. P. 72(b)(3). Any portions of the report and recommendation to which *no* specific objection is made are reviewed only for clear error. *Liberty Am. Ins. Grp., Inc. v. WestPoint Underwriters, L.L.C.*, 199 F. Supp. 2d 1271, 1276 (M.D. Fla. 2001); *accord Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006).

The Court, having conducted a *de novo* review of the record, agrees with Judge Reinhart's well-reasoned analysis and conclusion that the Motion should be denied. In his Objections, Movant raises several arguments, which the Court finds are without merit for the reasons explained below.

**Objections as to Ground Six**

First, Movant argues that the Magistrate Judge violated the *Clisby* rule by failing to address Ground Six. *See Clisby v. Jones,* 960 F.2d 925, 936 (11th Cir. 1992) (district courts must resolve all claims for relief raised on collateral review, regardless of whether relief is granted or denied); *see also Rhode v. United States,* 583 F.3d 1289, 1291 (11th Cir. 2009) (*Clisby*, which addressed a § 2254 petition, applies equally to § 2255 proceedings). Movant is correct insofar as Ground Six must be addressed separately under *Clisby*. However, Ground Six is untimely under AEDPA's one-year statute of limitations.[1] Under 28 U.S.C. § 2255(f), Movant had one year from the date on which his conviction became final, which was July 28, 2017, to raise this claim, as it did not rely on newly discovered evidence or a new rule of constitutional law. *See* § 2255(f)(1). Movant did not raise this claim until September 25, 2019, more than sixteen months into the proceeding and more than two years after his conviction became final. *See* [ECF No. 62].

---

[1] Although the Government has not raised the statute of limitations defense, District courts may *sua sponte* dismiss a habeas claim as untimely so long as the petitioner had adequate notice of the need to address timeliness and an opportunity to respond. *See Paez v. Sec'y, Fla. Dep't of Corr*., 947 F.3d 649, 655 (11th Cir. 2020). Movant was informed via the form for § 2255 motions that he must state all his grounds for relief in his motion and that "if you fail to set forth all grounds in this motion, you may be barred from presenting additional grounds at a later date." [ECF No. 1 at 3] (emphasis in original); *see also* Rule 2(c), Rules Governing Section 2255 Proceedings. Movant was also notified numerous times by the Magistrate Judge that he had one year from the date his conviction became final to raise his claims. *See*, *e.g.*, [ECF Nos 5, 18, 43]. Despite these admonishments, Movant waited sixteen months before asserting Ground Six.

Moreover, Ground Six does not relate back to Movant's timely filed claims. "[F]or an untimely § 2255 claim to 'relate back' under Rule 15(c), the untimely claim must have more in common with the timely filed claim than the mere fact that they arose out of the same trial and sentencing proceedings." *Davenport v. United States*, 217 F.3d 1341, 1344 (11th Cir. 2000). "Instead, in order to relate back, the untimely claim must have arisen from the 'same set of facts' as the timely filed claim, not from separate conduct or a separate occurrence in 'both time and type.'" *Id*. (citations omitted).

In his original motion to vacate (and numerous amendments thereafter), Movant asserted six distinct ineffective-assistance-of-counsel claims. He alleged that counsel was ineffective for (1) advising Movant to stipulate to an inaccurate factual basis and loss amount in his plea agreement, leading to an excessive sentence[2]; (2) failing to successfully object to the sophisticated means enhancement at sentencing; (3) failing to successfully object to the leadership role enhancement at sentencing; (4) failing to object to a nationwide sentencing disparity; (5) failing to argue the correct restitution amount; and (6) failing to file a direct appeal. *See*, *e.g.*, [ECF Nos 1, 16, 22, 35, 42, 45-1, 55]. Then, on September 25, 2019, more than sixteen months into the proceeding, Movant alleged for the first time that counsel was ineffective for failing to advise him that the wire transmissions described in the plea agreement fell outside the scope of the wire fraud statute. *See* [ECF No. 62 at 4–7].

To be sure, Movant continuously modified his claims throughout the course of the proceeding. But nowhere in any of his numerous amended motions to vacate filed prior to

---

[2]   In most versions of his motion to vacate, Movant divided this claim into three grounds: that counsel was ineffective for (1) advising Movant to plead guilty without fully reviewing the evidence in the case; (2) allowing Movant to stipulate to an incorrect factual basis in the plea agreement; and (3) allowing the Court to rely on an incorrect factual basis at sentencing. However, all three grounds raised essentially the same claim: that the factual basis in the plea agreement was incorrect, and that counsel was therefore ineffective for advising Movant to stipulate to it.

September 25, 2019 did Movant allege that the wire transmissions charged in the plea agreement did not constitute wire fraud. Ground Six is thus distinct from Movant's original ineffective assistance claim concerning his plea, which alleged that the factual basis of his plea agreement was incorrect—in other words, that Movant did not actually commit the acts described in the factual basis. Ground Six does not allege that the factual basis is incorrect; rather, it alleges that the acts described in the factual basis do not constitute wire fraud. Although both the old and new claims are ineffective assistance claims concerning Movant's plea, they are distinct claims that "arose from separate conduct and occurrences in both time and type." *Davenport*, 217 F.3d at 1346.

In *Chery v. United States*, 740 F. App'x 687 (11th Cir. 2018), the Eleventh Circuit found that a § 2255 movant's claim that "counsel improperly failed to investigate his case and advise him that his underlying conduct did not violate the statute under which he was charged" did not relate back to his claim that "counsel improperly pressured him to sign a plea agreement by overstating the consequences of not doing so and failing to provide him with a full copy of the agreement to review." *Id*. at 689. The Eleventh Circuit reasoned that although the movant claimed "that both courses of conduct rendered his plea involuntary, they were nonetheless 'separate conduct and occurrences in both time and type.'" *Id*. (quoting *Davenport*, 217 F.3d at 1346); *see also Mabry v. United States*, 336 F. App'x 961, 964 (11th Cir. 2009) (holding that an untimely ineffective assistance claim did not relate back to a timely filed ineffective assistance claim despite the fact that both claims concerned counsel's performance at sentencing). Similarly here, although Movant insists that both of counsel's alleged errors rendered his plea involuntary, counsel's alleged error in counseling Movant to sign a factually inaccurate plea agreement was a separate occurrence from counsel's alleged failure to advise Movant that the conduct set forth in the plea agreement did not violate federal law. Accordingly, Ground Six does not relate back to Movant's timely filed claims and is thus time-barred.

Even if Ground Six were timely, however, it is plainly without merit. Movant claims that the wire transmissions described in the plea agreement were not "for the purpose of executing the alleged scheme to defraud" because they occurred after Movant's schemes had "come to fruition." [ECF No. 72 at 19]. Movant is incorrect. Under 18 U.S.C. § 1343, "[a]n interstate wire transmission is 'for the purpose of executing' the scheme to defraud if it is 'incident to an essential part of the scheme' or 'a step in the plot.'" *United States v. Hasson*, 333 F.3d 1264, 1273 (11th Cir. 2003) (quoting *Scmuck v. United States*, 489 U.S. 705, 710–11 (1989)). Conversely, a wire transmission falls outside the scope of the wire fraud statute if it was made after the scheme had "reached fruition," which means "the point beyond which mail and wire transmissions cannot be in furtherance of the scheme." *United States v. Evans*, 473 F.3d 1115, 1119 (11th Cir. 2006).

Movant pled guilty to Counts One and Eight of the Indictment. As to Count One, the factual basis of the plea agreement established that Movant's $75,000 wire transfer made on May 16, 2013 was in furtherance of his scheme to defraud. *See* [ECF-Cr. No. 49 at 11]. The factual basis explained that this $75,000 came from the $1.2 million which Movant defrauded from the South Carolina Coordinating Council for Economic Development ("SCCCED"). *Id*. Between May 6, 2013 and July 26, 2013, Movant submitted fraudulent invoices to SCCCED for work that his company never performed. *Id*. After submitting these fraudulent invoices, Movant's company, Essex Holdings, received payments from SCCCED, which he then deposited into accounts he and his wife controlled. *Id*. The factual basis made clear that the $75,000 wire transfer involved those funds and was "incident to an essential part" of Movant's scheme. *Id*. Movant alleges that counsel misinformed him that "any use of the wires—irrespective of the purpose—would make someone guilty of wire fraud." [ECF No. 72 at 19]. But the factual basis—which Movant swore at his plea colloquy was true—cured any such misadvice by establishing that the $75,000 wire transfer was "part of the scheme" to defraud SCCCED. [ECF-Cr. No. 49 at 11]. Thus, Movant affirmed when

he pled guilty that his $75,000 wire transfer charged in Ground One fell within the scope of the wire fraud statute.

In his Objections, Movant relies on *United States v. Waddell*, 840 F. App'x 421, 441–42 (11th Cir. 2020), which held that a downstream wire transfer that a defendant made between his personal accounts was not wire fraud because it was made after his scheme had come to fruition and he had already gained exclusive control of the fraudulently obtained funds. Movant maintains that the $75,000 wire transfer between accounts he controlled was just like the transfer at issue in *Waddell*. In that case, however, the defendant first withdrew the ill-gotten funds from his corporate account in *cash*, then deposited that cash into a second personal account he controlled, and from that second account wired the money to a third personal account. *Id*. at 441. The Eleventh Circuit found that this "final downstream wire transfer," did not constitute wire fraud because the defendant had already gained control over the funds, and "[w]hat he subsequently chose to do with those funds was not incident to an essential part of the fraudulent scheme." *Id*. at 442.

Movant's $75,000 transfer was more like the *second* wire transfer at issue in *Waddell*, which the Eleventh Circuit found did constitute wire fraud. That wire transfer was from the defendant's corporate account to his personal account, and the defendant did not first convert the funds into cash. *Id*. at 443. The Eleventh Circuit found that this wire transfer "was essential to the end goal of the scheme, which was Defendant gaining personal access to the money," because "so long as funds remained in the corporate account there was the possibility that those monies could be drained before Defendant had used them to fund his personal expenses." *Id*. As the Eleventh Circuit explained, "Defendant had to convert the money to his own use, or otherwise move it from a corporate account, to guard against third parties seizing these corporate funds. His wiring of these funds to his [personal] account accomplished that goal and hence was in furtherance of the fraudulent scheme." *Id*.

Thus, *Waddell* does not vindicate Movant's argument. In this case, as Movant concedes, his $75,000 wire transfer originated from his company's TD Bank account and Movant did not first convert the funds into cash. [ECF No. 133 at 7]. Movant further acknowledges that the money deposited into his TD Bank account "was received by checks" from SCCCED. *Id*. Thus, this wire transfer was a step in furtherance of the end goal of Movant's scheme: to gain personal access to corporate funds derived from his scheme to defraud SCCCED. Accordingly, Movant's argument that "[n]o such nexus existed between the charged wires and the alleged scheme to defraud" is without merit. *Id*. at 9.

As to Count Eight of the Indictment, the factual basis established that Movant sent the fraudulent Essex Financial Report to investors via wire communications (email) and made a wire transfer of $50,000 of fraudulently obtained investor funds "[i]n furtherance of the [Chilean] scheme." [ECF-Cr. No. 49 at 12–13]. The emails, according to the Indictment, were sent on September 24, 2012, and the $50,000 wire transfer was made on March 5, 2013. *See* [ECF-Cr. No. 1 at 9]. The plea agreement established that Movant's scheme to defraud investors by purporting to invest in Chilean sugar and iron ore mining lasted from around September 2010 through at least May 2014. *See* [ECF-Cr. No. 49 at 12]. Accordingly, these wire transmissions were made well before Movant's scheme came to fruition, and Movant cannot dispute that sending a fraudulent financial report to investors via email was part of his scheme to defraud. In sum, Ground Six is without merit because the conduct charged in the factual basis of the plea agreement constituted wire fraud.

**Movant's Objections as to the Remaining Grounds**

Movant's Objections to the Magistrate Judge's findings on his remaining grounds are likewise without merit. As to Ground Four, Movant merely reasserts his argument that counsel was ineffective at sentencing for failing to translate a letter purportedly showing how Movant spent

$18 million in funds that the Court believed were still missing. [ECF No. 133 at 8–11]. The Magistrate Judge correctly found that counsel was not ineffective at sentencing because he argued the loss amount in detail and attempted to account for the missing money. [ECF No. 131 at 10–11]. Moreover, Movant cannot show prejudice from his counsel's performance at sentencing because the facts set out in the factual basis, along with the extensive evidence of the loss amount presented by the Government at sentencing, supported the guidelines calculation in this case, and Movant was sentenced in the middle of the guidelines range. Likewise, the overwhelming evidence as to loss precludes Movant from showing prejudice on Grounds Two and Three, which alleged that counsel was ineffective for failing to understand the financial aspects of the case.

Lastly, as to Ground One, the Magistrate Judge correctly found that counsel was not ineffective in counseling Movant's plea because Movant swore under oath that (a) he had reviewed his plea agreement and factual basis with counsel; (b) he understood his plea agreement; (c) counsel had done everything Movant had requested; and (d) Movant was fully satisfied with counsel's representation. *Id*. at 8. In his Objections, Movant puts forth the conclusory allegation that his plea was coerced by the Government's "illusory" promise not to prosecute his wife, who he now claims was not involved in his fraud scheme. [ECF No. 133 at 15]. This allegation is foreclosed by Movant's plea agreement, in which Movant stipulated that his wife had participated in his fraud scheme. *See* [ECF-Cr. No. 49 at 3, 10–13]. Thus, Movant's Objections are without merit.

Accordingly, after careful consideration, it is **ORDERED AND ADJUDGED** as follows:

(1)   Judge Reinhart's Report [ECF No. 131] is **AFFIRMED AND ADOPTED** and incorporated into this Order by reference;

(2)   Movant's Amended Motion to Vacate pursuant to 28 U.S.C. § 2255 [ECF No. 72] is **DENIED**;

(3)   No certificate of appealability shall issue;

(4)  All pending motions not otherwise ruled on are **DENIED AS MOOT**; and

(5)  This case is **CLOSED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on this 18th day of October, 2022.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

cc:   All Counsel of Record; and
      Navin Shankar Subramaniam Xavier, *pro se*